# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MHD SAMER AL-AYOUBI (A# 208 396 084),<br><br>　2431 Hidden Meadow Ln<br>　Ballwin, MO 63021<br><br>　Plaintiff,<br><br>vs.<br><br>KIRSTJEN NIELSEN, in her official capacity as Secretary of the Department of Homeland Security,<br><br>Serve:　Office of the General Counsel<br>　　　　Department of Homeland Security<br>　　　　Mail Stop 3650<br>　　　　Washington, D.C. 20528<br><br>L. FRANCIS CISSNA, in his official capacity as Director of U.S. Citizenship and Immigration Services;<br><br>Serve:　U.S. Citizenship & Immigration<br>　　　　Services<br>　　　　425 I. Street, N.W., Room 6100<br>　　　　Washington, D.C. 20536<br><br>KENNETH MADSEN, in his official capacity as Director of the Chicago Asylum Office, U.S. Citizenship and Immigration Services;<br><br>Serve:　Mr. Kenneth Madsen<br>　　　　Chicago Asylum Office<br>　　　　181 W. Madison St.<br>　　　　Suite 3000<br>　　　　Chicago, IL 60602<br><br>and<br><br>JEFFERSON SESSIONS, in his official capacity as Attorney General of the United States. | Case No. 1:18-cv-03353 |

Serve: Jefferson Sessions, Attorney General
      U.S. Department of Justice
      950 Pennsylvania Ave., N.W.
      Washington, D.C. 20530

  Defendants.

## COMPLAINT

Plaintiff Mdh Samer Al-Ayoubi asserts his cause of action against Defendants Kirstjen Nielsen, L. Francis Cissna, Kenneth Madsen and Jefferson Sessions in their official capacities as follows:

## JURISDICTION AND VENUE

1. This is a civil action brought to compel Defendants, and those acting under them, to adjudicate Plaintiff's long pending Application for Asylum and for Withholding of Removal (Form I-589).

2. As the Defendants have failed to undertake their mandatory duty to render a decision on this Application after an extreme delay of more than four years, Plaintiff seeks a writ of mandamus from this Honorable Court compelling Defendants to adjudicate Plaintiff's Application. 28 U.S.C. § 1361 (West 2010).

3. Further, Plaintiff seeks to compel Defendants to adjudicate the Application, pursuant to the Administrative Procedures Act ("APA") because Defendants have "unlawfully withheld or unreasonably delayed" the adjudication of this Application. 5 U.S.C. § 706(1) (West 2010).

4.     The jurisdiction of this Court is invoked pursuant to 8 U.S.C. § 1447(b) (West 2010), 28 U.S.C. § 1361 (West 2010) and 28 U.S.C. § 1331 (West 2010).

5.     Venue is properly in this Court because each of the Defendants maintain offices in this district.  Plaintiff's asylum application is currently pending in the Chicago Asylum Office.  Therefore, venue is proper under 28 U.S.C. § 1391(e)(2) (West 2010).

## PARTIES

6.     Defendant Kirstjen Nielsen, the Secretary of the DHS, is the highest ranking official within the DHS.  Nielsen, by and through her agency for the DHS, is responsible for the implementation of the Immigration and Nationality Act (hereinafter sometimes referred to as "the INA"), and for ensuring compliance with applicable federal law, including the Administrative Procedures Act (hereinafter sometimes referred to as "the APA").  Nielsen is sued in her official capacity as an agent of the government of the United States.

7.     Defendant L. Francis Cissna is the Director of the USCIS and is sued only in his official capacity, as well as his successors and assigns. The USCIS is headquartered at 20 Massachusetts Avenue, N.W., Washington, DC 20529. The USCIS is assigned the task of adjudicating applications for asylum status under § 245 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1255 (West 2010).

8. Defendant Kenneth Madsen is the Director of the USCIS Chicago Asylum Office and he is sued only in his official capacity, as well as his successors and assign. The Chicago Asylum Office is located at 181 Madison St., Suite 3000, Chicago, IL 60602.

9. Defendant Jefferson Sessions is the Attorney General of the United States who is sued only in his official capacity, as well as his successors and assigns. The Department of Justice is headquartered at 950 Pennsylvania Avenue, NW, Washington, D.C. 20530.

10. The USCIS, through the Chicago Asylum Office, has a mandatory duty to act on applications for asylum within a reasonable period of time.

11. Plaintiff is a Syrian citizen living in Ballwin, Missouri.

12. At the time of filing of his asylum application, Plaintiff was residing in Orlando, Florida.

13. The Chicago Asylum Office is responsible for claims of asylum filed by people living in Ballwin, MO, including Plaintiff. Plaintiff recently moved to Ballwin, Missouri and, upon information and belief, his case is currently being held at the Chicago Asylum Office.

## **ASYLUM PROCESS**

14. Federal immigration law allows persons who are physically present in the United States to apply for asylum, withholding of removal and protection under the Convention against Torture.

15. To prevail on an asylum claim, an applicant must demonstrate that she cannot return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see also 8 U.S.C. § 1158(b)(1)(A).

16. Those who are granted asylum in the United States may not be removed to the country in which they face persecution. 8 U.S.C. § 1158(c)(1)(A).

17. In addition, asylees may file a petition to accord their spouse and/or children derivative asylum status. 8 C.F.R. § 208.21(a).

18. After they have held that status for at least one year, asylees may adjust their status to that of a lawful permanent resident. 8 U.S.C. § 1159(b).

19. After an asylum case is filed, the proposed beneficiary is fingerprinted and a background check is completed.

20. The asylum applicant is eventually scheduled for an interview by the responsible asylum office.

21. A decision is then rendered on whether the person has a credible fear of persecution and asylum is accordingly granted or denied.

### PLAINTIFF'S ASYLUM CASE UNREASONABLY DELAYED

22. On or about January 30, 2014, Plaintiff filed his I-589 application for asylum, withholding and CAT protection with the Defendants. USCIS sent a receipt notice on the case to Plaintiff after assigning a case number.

23. The basis of Plaintiff's claim for asylum was his religious and political views regarding the deteriorating situation in his home country of Syria.

24. As part of the application process, USCIS obtained Plaintiff's fingerprints and conducted a background check.

25. Defendants conducted an interview on Plaintiff's asylum case in Miami on April 24, 2017.

26. USCIS has not decided Plaintiff's asylum case, even though more than four years have passed since he filed his application.

27. Plaintiff has made numerous attempts to contact USCIS to find out the status of his Application, but to no avail.

28. As of the date of this Complaint, Plaintiff has not received information as to if or when the I-589 application would be adjudicated.

29. Plaintiff seeks only what the law provides, which is a final decision on his asylum application within the reasonable timelines required by law.

30. Plaintiff is unable to resolve this matter through administrative channels or otherwise, and mandamus and APA relief are the only viable means of obtaining the adjudication of Plaintiff's pending matters.

31. Plaintiff has made numerous InfoPass appointments at USCIS to find out what has happened to his case.

32. Plaintiff has called the 1-800 number and spoken to supervisors but has received no relief.

33. Plaintiff has routinely contacted USCIS and the Miami Asylum Office but no movement has occurred.

34. Plaintiff has also sought the intercession of senators in both Florida and Missouri but this too has resulted in no decision by the Miami Office, nor by the St Louis Office following the transfer of the case.

35. Plaintiff has been contacting the USCIS office and elected representatives on a regular basis for four years in an attempt to have their case adjudicated. This includes sending letters, calling, and going to the offices in person.

36. Plaintiffs numerous efforts have been to no avail, either in Florida or subsequently in Missouri.

37. Defendants' delay in adjudicating Plaintiff's I-589 Application is unreasonable in relation to their stated processing times for like applications.

38. The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(I) (West 2010).

39. Mandamus is a remedy available for extreme agency delay where the agency has not performed a mandatory action. 28 U.S.C. § 1361 (West 2010).

40. Defendants have unreasonably delayed and failed to perform a mandatory action in adjudicating Plaintiff's application.

41. Defendants owe Plaintiff the duty to act upon his application for asylum and have unreasonably failed to perform these duties.

42. Upon information and belief, USCIS has refused to adjudicate Plaintiff's application in accordance with applicable legal criteria. Instead, USCIS has applied different rules under a policy known as the Controlled Application Review and Resolution Program ("CARRP"), which has resulted in the agency refusing to adjudicate Plaintiff's application.

43. Since 2008, USCIS has used CARRP—an internal policy that has neither been approved by Congress nor subjected to public notice and comment—to investigate and adjudicate applications deemed to present potential "national security concerns."

44. CARRP prohibits USCIS field officers from approving any application with a potential "national security concern," instead directing officers to deny the application or delay adjudication—often indefinitely—in violation of the INA.

45. CARRP's definition of "national security concern" is far more expansive than the security-related ineligibility criteria for immigration applications set forth by Congress in the INA.

46. CARRP identifies "national security concerns" based on deeply-flawed and expansive government watchlists, and other vague and imprecise criteria that bear no relation to the security-related statutory ineligibility criteria.

47. The CARRP definition illegally brands innocent, law-abiding residents, like Plaintiff, who does not pose a security threat, as "national security

concerns" on account of innocuous activity and associations, innuendo, suppositions and characteristics such as national origin.

48.    Although the total number of people subject to CARRP is not known, USCIS data reveals that between FY2008 and FY2012, more than 19,000 people from twenty-one Muslim-majority countries or regions were subjected to CARRP.

49.    CARRP unfairly and illegally targets individuals from Muslim-majority countries for increased and unlawful scrutiny.

50.    Due to CARRP, USCIS has not adjudicated Plaintiff's application, as the law requires.

51.    Although USCIS has thus far prevented Plaintiff and his wife from receiving asylum in the U.S., the Defendants have not notified Plaintiff that they consider him to be a potential "national security concern," provided the reasons why they have classified him in this way, or afforded him any opportunity to address and correct any basis for USCIS's concerns.

52.    Plaintiff therefore requests that the Court enjoin USCIS from applying CARRP to his immigration application and declare that CARRP violates the INA; the Due Process Clause of the Fifth Amendment to the U.S. Constitution; and the Administrative Procedure Act ("APA").

WHEREFORE, Plaintiff prays that the Court:

a.    Enter a judgment declaring that (a) CARRP violates the INA and its implementing regulations; the Fifth Amendment to the United States Constitution;

and the APA; and (b) Defendants violated the APA by adopting CARRP without promulgating a rule and following the process for notice and comment by the public;

b. Enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them from applying CARRP to the processing and adjudication of Plaintiff's immigration benefit applications;

c. Order Defendants to rescind CARRP because they failed to follow the process for notice and comment by the public;

d. Compel Defendants and those acting under them to perform their duties owed to Plaintiff by adjudicating the Application;

e. Grant attorney's fees, costs of court and all further relief available to Plaintiffs under the Equal Access to Justice Act, 5 U.S.C. § 504 (West 2010); and

f. Grant such other and further relief as this Court deems proper under the circumstances.

HACKING LAW PRACTICE, LLC

*/s/ James O. Hacking, III*
James O. Hacking, III
34 N. Gore, Suite 101
St. Louis, MO 63119
Phone: (314) 961-8200
Fax: (314) 961-8201
Email: jim@hackinglawpractice.com